IN THE UNITED STATES DISCTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| KRISTEN SHIVELY, | ) |
| | ) |
| Plaintiff, | ) Case No. 4:09CV00010 |
| | ) |
| v. | ) |
| | ) **Memorandum Opinion** |
| CITY OF MARTINSVILLE, VIRGINIA, | ) |
| HENRY COUNTY, VIRGINIA, and | ) |
| HENRY COUNTY 9-1-1 | ) By: Jackson L. Kiser |
| COMMUNICATIONS CENTER, | ) Senior United States District Judge |
| | ) |
| Defendants. | ) |

Before me are the Defendants' Motions to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties have fully briefed the issues and, on October 22, 2009, appeared before me to argue their positions in open court. The matter is now ripe for decision. For the reasons stated below, I will **GRANT** the motions and **DISMISS** this case from the docket of the court. Additionally, the Motions to Dismiss the Original Complaint [Docket Nos. 6 and 8] are hereby **DISMISSED** as moot.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

The City of Martinsville and Henry County ("Defendants") jointly founded the Martinsville-Henry County 9-1-1 Communications Center ("9-1-1 Center," which is also a defendant) pursuant to a contractual agreement between the Defendants for the purposes of providing emergency dispatch services for the Defendants' residents. (Compl. ¶ 4.)[2] The 9-

---

[1] The statement of facts is from Plaintiff's Amended Complaint and, at this stage of the case, is presumed to be true.

[2] For ease, all references and citations to the "Complaint" are referring to the First Amended Complaint except

1-1 Center is governed by a six-member Board of Directors that includes the Henry County Administrator, Henry County Sheriff, Henry County Public Safety Administrator, Martinsville City Manager, Martinsville Police Chief, and Martinsville Fire Chief. (Compl. ¶ 5.) Defendants Martinsville and Henry County received a Public Safety Interoperable Communications Grant ("PSIC Grant") and used the funds to purchase subscriber units and communications-related hardware for responders to improve emergency response times and interoperability among responders in Henry County, Franklin County, Patrick County, and Martinsville. (*See* Compl. ¶ 11–12.)

Kristen Shively ("Plaintiff") was offered employment at the 9-1-1 Center on May 6, 2008. (Compl. ¶ 16.) When she started work, she was told that her pay scale would be commensurate with the Henry County pay scale and that, if she completed her probationary period, she would receive health insurance benefits from Henry County. Defendant Henry County maintained Plaintiff on its payrolls and Plaintiff was instructed to use the Henry County Human Resources Department. (Compl. ¶ 7.) Defendant Henry County admits that it functioned as the Plaintiff's employer for the purposes of payroll and reimbursement procedures required by the State Compensation Board.

After she started work, Plaintiff was placed on a six-month probationary period. (Compl. ¶ 17.) Plaintiff contends that, as part of the process, she was given numerous employment screening tests, many of which tested her reading comprehension, memory recall, and various cognitive abilities. (Compl. ¶ 18.) Plaintiff asserts that her performance was exceptional. (*Id.*) She further asserts that she was told throughout her probationary period that she was doing a "great job" and did not receive any indication that her performance was less than satisfactory. (Compl. ¶ 18.) Defendants deny that any such testing

where otherwise noted.

or commendation was given.

During her probationary period, Plaintiff claims that she overheard several co-workers making unflattering statements about disabilities in general as well as individuals suffering from dyslexia. (Compl. ¶ 21.) Plaintiff advised her co-workers that she suffered from dyslexia and that such statements offended her. (Compl. ¶ 22.) Plaintiff's supervisor, Margaret Bruce, was present at the time Plaintiff made her admission. (*See* Compl. ¶¶ 21–23.) Ms. Bruce informed Wes Ashley, the 9-1-1 Center Director, that Plaintiff was dyslexic. (Compl. ¶ 24.)

Plaintiff contends that, after her condition was made known to her supervisors, she was the victim of a "campaign of harassment and denigration . . . ." (Compl. ¶ 25.) She claims she was the victim of:

- hyper-intensive scrutiny of her work;
- being assigned a supervisor to sit with her at all times to place unnecessary pressure on her;
- having her perceived disability discussed with her co-workers;
- being denied the opportunity to attend "Dispatcher School"; and
- humiliation when Defendants demanded that she produce "documentation" of her disability and when Defendants required her to retrieve records from when she was in special education classes in elementary school.

(Compl. ¶ 25.) Plaintiff contends that this campaign of harassment, humiliation, and denigration was designed to force the Plaintiff to resign. (Compl. ¶ 26.) Defendants deny all of these allegations.

Plaintiff was terminated on September 23, 2008. (Compl. ¶ 35.) Plaintiff also contends that the reasons for her discharge were pretextual. (Compl. ¶ 27.) She asserts that Defendants: changed her work schedule without notice to make Plaintiff unable to report for work; criticized her for "inappropriate dress"; and maintained secret logs of her performance that were not kept on other employees. (Compl. ¶ 27.) Defendants deny that such actions

took place and maintain that Defendant was terminated because of "concerns about her ability to perform the job of telecommunicator." (Answer ¶ 22.)

Plaintiff filed suit in this court on April 8, 2009, against Defendants, as well as Wes Ashley, Margaret Bruce, University of North Carolina at Chapel Hill ("UNC"), and Donna Yerby. In her Complaint, Plaintiff alleged that the Defendants violated her rights by discriminating against her in violation of the Federal Rehabilitation Act, 29 U.S.C. § 794 *et seq.* ("Rehab Act"). She alleged that she was "perceived" as being disabled, *i.e.,* her dyslexia made her unable to perform "the job of Telecommunicator." (Compl. ¶ 37.) Ashley, Bruce, UNC, and Yerby were all voluntarily dismissed from the suit by Plaintiff. Following Motions to Dismiss by the Defendants, filed on July 7, 2009, Plaintiff filed her First Amended Complaint on July 17, 2009. On July 31, 2009, Defendants filed Motions to Dismiss the Amended Complaint, along with their answer to the Amended Complaint. Plaintiff filed responses on August 28, 2009. Defendants replied to the responses on September 3, 2009 (Henry County and the 9-1-1 Center), and September 11, 2009 (Martinsville). I heard oral arguments on these motions on October 22, 2009. The matter is now ripe for decision.

## II.     STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is limited to "the extraordinary case where the pleader makes allegations that show on the face of the complaint some insuperable bar to relief." *Browning v. Vecellio & Grogan, Inc.*, 945 F. Supp. 930, 931 (W.D. Va. 1996) (internal quotation omitted). When considering a motion to dismiss, "the court should accept as true all well-pleaded allegations" and construe those allegations in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari*, 7 F.3d

1130, 1134 (4th Cir. 1993). While the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level," or else dismissal is appropriate. *Id.*

### III.  ARGUMENT

Defendants contend that Plaintiff's failure to allege in her complaint that she was "perceived" as being substantially limited in a major life activity is fatal to her claim. *See Webb v. Med. Facilities of Am.*, No 7:05CV00409, 2005 WL 3547034, at *2 (W.D. Va. Dec. 28, 2005). In her complaint, Plaintiff asserts that Defendants "perceived Plaintiff as disabled and began a campaign of harassment and denigration against [her] . . . ." (Compl. ¶ 25.) She also alleges "[t]hat defendants, perceiving Plaintiff to be disabled, concluded that plaintiff was not able to perform the job of Telecommunicator and made such determination without any expert evaluation of the Plaintiff and without any justification of any kind." (Compl. ¶ 37.) The final reference to defendant's perceived disability is Plaintiff's allegation that "Defendants regarded Plaintiff as being disabled and perceived her dyslexia to be a substantial limitation such that Plaintiff was, in Defendant's opinion, unable to perform the job of telecommunicator." (Compl. ¶ I.5.) Nowhere in her complaint does Plaintiff allege that

Defendants perceived her as being substantially limited in performing any major life activity.

Plaintiff counters this grounds for dismissal by stating that, in her Amended Complaint, she averred that she "did not suffer from a disability which impaired the major life activities of seeing, hearing or working." (Compl. ¶ I.3.) She further argues that dyslexia—or the transposition of numbers and letters—affects a broad class of jobs. She "would have the same type of claim if she were fired from a job as a bank teller." (Pl.'s Resp. to Mot. to Dismiss ¶ II.A.3.) Her argument appears to be that, because the transposition of numbers and letters could affect a large number of positions, she was perceived as being substantially limited in activities that are "central to daily life." *See Toyota Mtr. Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002). Plaintiff argues that, because dyslexia *could* affect a broad class of jobs, she was perceived as being substantially limited in the major life activity of "working." *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492 (1999), *superseded by statute on separate grounds*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553; 29 C.F.R. § 1630.2(j)(3)(i).

## IV.      ANALYSIS

This is a perception case. Plaintiff asserts that, though she suffers from dyslexia, her cognitive malady[3] does not affect her ability to perform her job adequately. In fact, she contends that, before her employer learned that she suffered from dyslexia, her work was routinely praised. The problem, therefore, was not with her work; it was with the perception in her employer's mind. She contends that, though she did not have problems performing her

---

[3] Dyslexia is a cognitive condition that affects one's ability to read and process the written language. In many instances, letters and numbers are transposed in the reader's mind, making it difficult to accurately convey letters and numbers in the proper order (i.e., reading "tarp" or "part" as opposed to "trap"). *See American Heritage New Dictionary of Cultural Literacy* (3d ed. 2005), *available at* http://dictionary.reference.com/browse/dyslexia.

work, her employer erroneously believed she *would* have problems and punished her for those beliefs. *See* 29 C.F.R. § 1630.2(l)(1) (defining "regarded as having such an impairment" to mean "[having] a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation.").

Although Plaintiff contends that she is not disabled in the traditional sense, she must plead and prove that she is disabled in the legal sense. When pleading a cause of action under the Rehab Act, the plaintiff must allege that she either was disabled or was perceived as disabled. The Rehab Act defines "disabled" as "a physical or mental impairment that substantially limits one or more major life activities . . . or being regarded as having such an impairment." 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1). As both the Rehab Act and the Americans with Disabilities Act make clear, one is "disabled" in the legal sense if she is perceived as suffering from a disability—regardless of whether she *actually* suffers from one. *See* 42 U.S.C. § 12102(1)(C) (defining "disability" as "being regarded as having such an impairment"); *Marshall v. Wal-Mart Stores, Inc.*, No. 7:00CV00087, 2001 WL 420381, at *8 (W.D. Va. Feb. 28, 2001). As applies to this case, if Plaintiff intends to prove a violation of the Rehab Act, she must plead and prove that her employer perceived her as being disabled within the meaning of the law.

As with all pleadings, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see Iqbal*, 129 S. Ct. at 1949. Plaintiff may not merely assert that the Defendants perceived her as being disabled; she must allege all of the elements of her cause of action. She must allege that Defendants perceived her as suffering from an impairment that substantially limited one or more major life activities. *Cf. Doe v. Univ. of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1264–65 (4th Cir. 1995). It follows, then, that

Plaintiff must allege all of those requirements to qualify as legally disabled—specifically, that she is perceived as having an impairment that substantially limits one or more major life activities.

Furthermore, it is not enough to allege that Defendants perceived Plaintiff as being unable to perform *her* job; the law requires more. As Congressional regulations point out:

> The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i); *see also Sutton*, 527 U.S. at 491–92. In this case, Plaintiff's only allegation is that Defendants viewed her as unable to perform the job of telecommunicator. Under the law, such an allegation is insufficient to state a claim upon which relief can be granted.

As case law and federal regulations make clear, if an individual is limited in performing only one job or a narrow sub-set of jobs, she is not disabled in the legal sense. *See* 29 C.F.R. § 1630.2(j)(3)(i). In this case, just as in *Webb v. Medical Facilities of Virginia*, "the plaintiff does not indicate in any way that the defendant entertained a misconception of her ability to perform major life activities." No. 7:05CV00409, 2005 WL 3547034, at *2 (W.D. Va. Dec. 28, 2005). Plaintiff argues that Defendants' knowledge that she is dyslexic covers these required bases. Basically, because individuals suffering with dyslexia tend to confuse or transpose numbers and letters, the disorder would affect a broad class of jobs, such as accounting, bookkeeping, or practicing law.[4] She argues that transposing numbers and letters

---

[4] At oral arguments, counsel made reference to several cases dealing with dyslexia. *See, e.g., Marshall v. Wal-Mart Stores, Inc.*, No. 7:00CV00087, 2001 WL 420381, at *8 (W.D. Va. Feb. 28, 2001). Furthermore, Plaintiff appears to argue that the stigma of dyslexia is enough to qualify automatically as a disability. While Congress

would affect tasks that are "central to daily life," and thus meet the "major life activity" pleading requirement. *See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002).

Unfortunately for Plaintiff, simply contending that Defendants viewed her as suffering from an impairment that could, in the abstract, affect a broad class of jobs is not that same as alleging that Defendants viewed her as substantially limited in that broad class of jobs. It is not, and cannot, be enough simply to say that Defendants viewed her as impaired and allow innuendo and supposition to supply the rest. Plaintiff must allege that she was perceived as being substantially limited in a major life activity and must identify that major life activity. *Cf. Twombly*, 550 U.S. at 555. To require otherwise would take the teeth out of *Twombly's* admonition that a simple recitation of the elements of a cause of action will not do. *See id.* To allow Plaintiff to skate by arguing that she was perceived as disabled, noting that the definition of disabled includes "substantially limited in one or more major life activities," *see* 42 U.S.C. §§ 12102(1)(A), 12102(3), would require only that pleadings state the cause of action and nothing more.

Here, Plaintiff only alleged that the Defendants viewed her as unable to perform the job of telecommunicator. Because she has failed to allege in her complaint that the Defendants viewed her as substantially limited in the major life activity or working, or substantially limited in a broad range of jobs, she has not met her burden of pleading.

---

and the courts have noted that dyslexia *can* qualify as a disability, *see* Brian East, *Key Provisions of the ADA Amendments Act of 2008* (ALI 2009), *available at* SR010 ALI-ABA 973 [WL] (noting that "[t]he legislative history suggests that a finding of disability should now be fairly routine in cases involving . . . dyslexia . . . ."), I am unwilling to hold that, as a matter of law, one's perceived dyslexia is *per se* a disability under the law. Some studies estimate that 15-20% of the population is afflicted by symptoms of dyslexia. *See* INTERNATIONAL DYSLEXIA ASSOCIATION, DYSLEXIA BASICS 1 (2008), *available at* http:// www.interdys.org/ewebeditpro5/ upload/Basics_Fact_Sheet_5-08-08.pdf. Nevertheless, notable dyslexics include Alexander Graham Bell, David Boies, Thomas Edison, Albert Einstein, Woodrow Wilson, and John Lennon. Davis Dyslexia Association International, Famous People with the Gift of Dyslexia, http://www.dyslexia.com/famous.htm (last visited October 23, 2009).

## VI.    CONCLUSION

Because Plaintiff has failed to allege that the Defendants perceived her as being substantially limited with regard to one or more major life activities, she has failed to meet her burden of pleading. Therefore, I am granting Defendants' Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Because I am dismissing the complaint based on Plaintiff's failure to allege that she was perceived as being substantially limited in one or more major life activities, the remaining bases for dismissing the complaint are moot. In addition, the Motions to Dismiss the Original Complaint [Docket Nos. 6 and 8] are also dismissed as moot. The clerk is hereby directed to dismiss this case from the active docket of the court.

Entered this 29th day of October, 2009.

s/Jackson L. Kiser
Senior United States District Judge